IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEPHANIE BUKA,             )
                                 )
        Plaintiff,        )
                                 )    2:20-CV-00669-RJC
    v.                    )
                                 )
ALLEGHENY COUNTY,      )
PENNSYLVANIA, INC. and ALLEGHENY    )
COUNTY, OFFICE OF COUNTY    )
COUNCIL,                  )
                                 )
        Defendants.      )

## OPINION

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 10) filed by Defendant Allegheny County, Office of County Council ("ACC"), and a Motion to Dismiss (ECF No. 12) filed by Defendant Allegheny County, Pennsylvania ("the County") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motions will be denied.

## I. Factual Background & Procedural History

This action was removed from the Court of Common Pleas of Allegheny County on May 7, 2020. (ECF No. 1). Plaintiff alleges violations of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, *et seq.*) at Counts I (disability discrimination) and III (failure to accommodate), and violations of Title VII of the Civil Rights Act of 1964 ("Title VII") (45 U.S.C. § 2000e, *et seq.*) at Count V (sex discrimination). Plaintiff's Complaint also alleges violations of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.,* for disability and sex discrimination at Counts II, IV, and VI.

1

The allegations in the Complaint ("Compl.") are as follows. From 2005 to December 2011, Plaintiff worked in the Office of Allegheny County Council as a Senior Legislative Researcher. Compl., ¶8. In or around January 2012, she was promoted to the position of Constituent Services Coordinator, where she provided information to the public on county and community services, activities and programs, and assisted constituents in obtaining services or resolving complaints. Compl., ¶9. In July 2016, Council's former Chief of Staff, Joe Catanese ("Catanese"), informed Buka that her title/role was being changed to "Constituent Services Manager (In Training)." Compl., ¶10. She later learned that, despite support from several members of Council management, Catanese actively opposed her promotion, which Buka had reason to believe was due to her gender. Compl., ¶11. However, she received no additional pay for her work, and her salary remained at $51,500, the lowest of all management-level staff, and less than half of what her male counterpart received. Compl., ¶12.

Later in May 2017, the County posted a Job Announcement for the vacant Chief of Staff position. Plaintiff exceeded all of the prerequisites for the position and she applied for the job. Compl., ¶¶17-23. She interviewed for the Chief of Staff position on July 12, 2017, and several Council members said that they would support appointing her to the position. Compl., ¶24. However, five days later, Council interviewed another candidate, Kenneth Varhola ("Varhola"), who had far less relevant experience and did not meet the "preferred" educational background. Compl., ¶25. However, the same day he interviewed, he was offered the position, which he accepted. Compl., ¶26. Buka alleges she was passed over for a less-experienced male with demonstrably inferior qualifications. Compl., ¶27. Soon after, Buka learned that the promotion she had received in May 2017 was being withdrawn, and that she would need to apply and interview to remain in that role. Compl., ¶28.

Being denied both promotions elevated Buka's stress, which exacerbated her Type 1 Diabetes. Compl., ¶31. Her condition deteriorated, and she took medical leave. Compl., ¶31. When she tried to return about two weeks later, due to the stressful environment related to her being passed over for two positions based on gender, her medical issues reappeared, and she took additional medical leave. Compl., ¶32.

On January 2, 2018, Buka formally requested a reasonable accommodation for her condition, seeking a transfer to an available position elsewhere in County government. Compl., ¶33. She directed her request to Varhola, who immediately responded with hostility, seeking to terminate Buka for "job abandonment." Compl., ¶34-35. In response, John Cambest ("Cambest"), outside counsel for the County and County Council, advised Buka to seek reasonable accommodations through the County's Human Resources department. Compl., ¶¶36-37.

In January 2018, Buka met with a County Employee Relations Manager to lodge complaints of sex discrimination and to seek reasonable accommodations. *Id.* In a memo summarizing their January 2018 meeting, the County Employee Relations Manager wrote that Buka said she was "ready to return to work, but she cannot return to the Office of County Council due to the stress and its impact on [her] serious health condition." Compl., ¶38. Thereafter, Buka provided the County Employee Relations Manager with several open positions for which she was well-qualified. Compl., ¶39. She followed up with the County's Employee Relations Manager several times. Compl., ¶41. She even corresponded with the County's third-party medical leave administrator (UPMC WorkPartners), but they indicated that the County was ignoring them as well. Compl., ¶42. Despite her efforts, Buka received no contact from Defendants until May 24, 2018 when, on behalf of the County and the County Council, Cambest

sent Buka a letter stating that Allegheny County had completed its investigation of her complaints. Compl., ¶¶ 43-44. In his letter, Cambest noted that Allegheny County had concluded that there was no "hostile work environment" and, with respect to reasonable accommodations, he wrote that "there are no positions within Allegheny County Council or the County of Allegheny that would be available to you." Compl., ¶¶ 44-45.

## II. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a

complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, a district court may not consider matters extraneous to the pleading sought to be dismissed. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997). Fed. R. Civ. P. 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

As a general rule, a district court considering a 12(b)(6) motion to dismiss relies on "the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir.2007); *see also In re Burlington Coat Factory*, 114 F.3d at 1425 (deciding that the district court, in ruling on a motion to dismiss, should not have considered information from the brief supporting the motion to dismiss).

## III.    Discussion

The ACC argues, *inter alia,*[1] that Counts I and III brought under the ADA must fail because Defendant ACC is not an "employer" as defined by the Act as it does not employ 15 or more employees. See 48 U.S.C. § 12111(5)(A). For the same reason, the ACC argues, her Title VII claims brought in Count V must be dismissed because it does not employ fifteen (15) or more employees. See 48 U.S.C. § 2000e(f). Likewise, Allegheny County argues that, "as a matter of law," it could not be a joint or single employer with County Council. *See* Allegheny County's Brief in Support of Motion to Dismiss. ("Brief"), at 5; *Nesbit v. Gears Unlimited, Inc*.,

---

[1] The ACC further argues her Title VII claim at Count V, must also fail because Plaintiff is not an employee as defined by the Act because she is in a position classified as "personal staff."

347 F.3d 72, 85-86 (3d Cir. 2003); *Fausch v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015).

The ACC has attached to its Brief in Support the Affidavit of Patrick Catena. (ECF No. 11 –1). Catena, the President of the Allegheny County Council, explains that "at no time relevant to Plaintiff's Complaint did Allegheny County Council employ fifteen (15) or more employees." Catena Aff., ¶ 2.  Exhibit A of the Affidavit contains biweekly payroll records showing that no more than eight (8) employees worked for ACC between January 9, 2009 and September 4, 2020. Exhibit B contains an organizational chart which shows only eight (8) positions within ACC.

Plaintiff has filed evidentiary objections to this affidavit, arguing:

> Catena does not allege that he did anything to investigate this issue, e.g., review personnel or payroll records. Likewise, he does not disclose (or even reference) any relevant evidence that may shed light on the question of who worked for County Council. In fact, even if Catena attempted to count the number of County Council employees—which Catena does not allege—Catena alleges no information about how employees were counted, i.e., who was included or excluded, and under what criteria.  Indeed, Catena does not even allege how many people he believes were County Council employees (or specify what he means by the "time relevant to Plaintiff's Complaint"); he just concludes that, whatever the number might be, it was not "fifteen (15) or more." See Catena Aff. ¶ 2.

(ECF No. 19 at 6).  Plaintiff argues the affidavit should be disregarded and that the court should decline to convert the motion to one for summary judgment.  In the alternative, Plaintiff requests an opportunity to conduct discovery on this issue.

Plaintiff further alleges that Defendant ACC and the County are "joint" or "single" employers.

> At all relevant times, the County and the County Council were the "joint employer" or "single employer" of Buka, insofar as both had and exercised the authority to hire, fire, transfer and promote employees, including Buka; to set conditions of employment, including compensation, benefits, and hours; to control employee records, including payroll, insurance, and taxes; and to monitor

6

and attempt to comply with obligations arising under state and federal
employment laws

(Compl. ¶ 5).

Whether the Defendants are a single or joint employer is an intensely factual inquiry that
can rarely be resolved on a motion to dismiss. *See Graves v. Lowery*, 117 F.3d 723, 729 (3d
Cir.1997) ("the precise contours of an employment relationship can only be established by a
careful factual inquiry). Thus, in the absence of a careful factual inquiry into which entity or
entities exercised control over Plaintiff, in the form of hiring and firing, promulgating work
rules, setting conditions of employment such as compensation and benefits, who supervised
Plaintiff, as well as who controlled employee records, it is difficult to decide this issue. The ACC
further argues, without citation to any binding federal precedent, that County Council and
Allegheny County cannot operate as a joint or single employer because of the Home Rule
Charter of Allegheny County and the Allegheny County Administrative Code. (ECF No. 11 at 8-
10). In the absence of further precedential support for this position, especially in light of other
case law*, e.g. Graves v. Lowery*, 117 F.3d 723, 726-27 (3d Cir. 1997) (reversing grant of motion
to dismiss Title VII sex discrimination suit against county where plaintiff had alleged facts
sufficient to impose liability on county as de facto co-employer of former state court clerks), we
will deny the motion to dismiss and address this issue at a later stage in this litigation.

ACC has supplemented their brief with an affidavit,[2] and argues:

When applying [the joint employment] test to the facts asserted by Kenneth
Varhola ("Mr. Varhola"), ACC's Chief of Staff, ACC is not a "joint employer"
with Defendant County. First, based on Mr. Varhola's Affidavit and Exhibits,
only ACC governs terms and conditions of employment of its employees. Exhibit
1, ¶¶ 4-8, 13-22, Exhibit B. As explained by Mr. Varhola, ACC's Policies and

---

[2] The County has also supplemented their briefs with matters outside the pleadings, including the organizational
chart for the government of Allegheny County, in support of its contention that Plaintiff was an employee of the
ACC, not the County.

Procedures govern the terms and conditions of its employees independent of Defendant County. *Id.*, ¶¶ 20, Exhibit B. Further, Mr. Varhola explains that County Council sets the compensation and Defendant County merely provides payroll services but has no control over the amount or types of compensation ACC provides to its employees. *Id.,* ¶ 20. Varhola explains that ACC promotes and demotes its employees with no involvement from the County. *Id.*, ¶ 20. Finally, Mr. Varhola explains that employees from County Council must apply for jobs in a department of Defendant County. *Id.*, ¶ 21. Similarly, any employees employed by Defendant County, must apply for position within County Council, like any other applicant. *Id.,* ¶ 22. Thus, only County Council controls terms and conditions of employment of its employees.

(ECF No. 24 at 5). Mr. Varhola explains Defendant County merely provides a payroll service to the ACC, thus, it cannot alter the terms and conditions of employment. *Id.* at 6, Varhola Affidavit at ¶ 19.  Yet as the Court in *Myers v. Garfield & Johnson Enters.* 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) explained, "[t]he joint employer doctrine by definition acknowledges that an individual may be employed by two separate entities that have apportioned the various duties of employer between themselves as they saw fit." *Id.*

Whether or not the joint or single employer theory will be successful, and whether or not the Defendants employ more than the requisite minimum of fifteen employees, will depend on the outcome of further discovery on this important, central issue, after the parties have been afforded an opportunity to exchange discovery requests and information. *Nesbit*, 347 F.3d at 85-86. As noted above, at the motion to dismiss stage, it is not appropriate to consider matters outside the pleadings, unless certain exceptions apply.  We find that Plaintiff has adequately pled that the Defendants acted as either a joint or single employer, and thus, possibly employ more than fifteen employees thereby.  (Compl. ¶¶ 5, 17-18, 36, 37, 44-45).   Accordingly, the motions to dismiss are denied in this regard.

 ACC also argues that Plaintiff is not an "employee" under Title VII because the definition of "employee" excludes "any person chosen by" an elected public official "to be on

such officer's personal staff." 42 U.S.C. Section 2000e(f).  Again, this matter is best suited to be decided after the parties have had a full and fair opportunity to gather sufficient  record evidence as to what plaintiff's position entailed, in addition to those duties as stated in her job description.

**IV.    Conclusion**

      For the reasons discussed above, the motions to dismiss will be denied.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 30, 2021

cc/ecf: All counsel of record